UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 22-cv-12479

Magistrate Judge Elizabeth A. Stafford

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT (ECF NOS. 13, 17)**

## I.    Introduction

Plaintiff Amber K. appeals the final decision of defendant
Commissioner of Social Security (Commissioner), which denied her
application for disability insurance benefits (DIB) and supplemental security
income (SSI) under the Social Security Act.  Both parties have filed
summary judgment motions and consented to the undersigned conducting
all proceedings under 28 U.S.C. § 636(c).  ECF No. 12; ECF No. 13; ECF
No. 17.  After review of the record, the Court **ORDERS** that:

- Plaintiff's motion (ECF No. 13) is **DENIED**;

- the Commissioner's motion (ECF No. 17) is **GRANTED**; and

- the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Plaintiff's Background and Disability Application

Born in November 1984, plaintiff was 34 years old when she applied for DIB and SSI in February 2019, with an alleged disability onset date of September 26, 2017.  ECF No. 10-2, PageID.54, 73.  She had past relevant work as a nanny and retail clerk.  *Id.*, PageID.72.  Plaintiff claimed disability from ulcerative colitis, anemia, chronic migraines, anxiety, and antiphospholipid syndrome.  ECF No. 10-3, PageID.135.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  ECF No. 10-2, PageID.54, 74.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.41.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 416.920(c).

3

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 26, 2017. ECF No. 10-2, PageID.57. At the second step, she found that plaintiff had the severe impairments of ulcerative colitis (UC), anemia, migraines, antiphospholipid syndrome, right-sided metatarsalgia, and pyoderma gangrenosum. *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.59-62.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of light work,[2] except that she:

- May never climb ladders, ropes, or scaffolds;
- Must avoid environments with a noise level above moderate;
- May not be exposed to excessive vibration or unprotected heights; and
- Must have access to a bathroom on a regular basis.

---

[2] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(b); Social Security Regulation (SSR) 83-10.

*Id.*, PageID.62.  At step four, the ALJ found that plaintiff can perform past

relevant work as a retail clerk.  *Id.* at PageID.72-73.  Even so, after

considering plaintiff's age, education, work experience, RFC, and the

testimony of the VE, the ALJ determined at the final step that there were

jobs in significant numbers that plaintiff could perform, including positions

as an office cleaner, inspector, and packager.  *Id.* at PageID.73-74.

### III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence[3] and

conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an
> existing administrative record and asks whether it contains
> sufficient evidence to support the agency's factual
> determinations.  And whatever the meaning of substantial in
> other contexts, the threshold for such evidentiary sufficiency is
> not high.  Substantial evidence, this Court has said, is more
> than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as
> adequate to support a conclusion.

---

[3] Only the evidence in the record below may be considered when
determining whether the ALJ's decision is supported by substantial
evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  The

substantial-evidence standard does not permit the Court to independently

weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d

917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

substitute its own judgment for that of the Commissioner merely because

substantial evidence exists in the record to support a different conclusion.");

*see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

1994) ("If the Secretary's decision is supported by substantial evidence, it

must be affirmed even if the reviewing court would decide the matter

differently, and even if substantial evidence also supports the opposite

conclusion.").

Plaintiff argues that (1) the ALJ's evaluation of her subjective

symptoms is unsupported by substantial evidence and (2) the ALJ

improperly evaluated the medical opinions.  ECF No. 13, PageID.2747-

2756.  The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff first challenges the ALJ's evaluation of her subjective

symptoms.  The regulations set forth a two-step process for evaluating a

plaintiff's subjective symptoms.  First, the ALJ evaluates whether objective

medical evidence of an underlying condition exists and whether that

6

condition could reasonably be expected to produce the alleged symptoms.

20 C.F.R. §§ 404.1529(a), 416.929(a); Social Security Ruling (SSR) 16-3p.

If so, the ALJ assesses any work-related limitations by determining the

intensity, persistence, and limiting effects of these symptoms.  20 C.F.R.

§§ 404.1529(a), 416.929(a); SSR 16-3p.  In sum, ALJs assess whether the

symptoms claimed are "consistent with the objective medical and other

evidence in the individual's record."  SSR 16-3p.

To evaluate the limiting effects of subjective symptoms, ALJs

consider all available evidence, including the plaintiff's history, laboratory

findings, statements by the plaintiff, and medical opinions.  20 C.F.R.

§§ 404.1529(a), 416.929(a).  Although a plaintiff's description of her

symptoms will "not alone establish that [she] is disabled," *id.*, the ALJ may

not disregard the plaintiff's subjective complaints because they lack

substantiating objective evidence, SSR 16-3p.  Without objective evidence,

ALJs are to consider a plaintiff's daily activities; the location, duration,

frequency, and intensity of pain; precipitating and aggravating factors; the

type, dosage, and side effects of medication to alleviate symptoms; and

any other treatment or measures used to relieve pain.  20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3).

7

The ALJ accurately summarized plaintiff's symptoms and concluded that the alleged severity and limiting effects of those symptoms differed from the record evidence.  ECF No. 10-2, PageID.63-64, 94-95, 105-119. After discussing plaintiff's medical history, the ALJ reasoned that her UC symptoms "wax and wane in severity" and were often mild or stable with infrequent flares.  *Id.*, PageID.68.  The ALJ noted that plaintiff's UC flares occurred when she stopped taking medication and stabilized when she was treated with medication and after she had a fecal transplant surgery in May 2019.  *Id.*, PageID.68-69.

The ALJ also found that plaintiff was often noncompliant with her medications, as she altered her medication and self-medicated without consulting her providers.  *Id.*, PageID.69.  And plaintiff declined her doctors' repeated recommendations to restart biologic medication.  *Id.*  While plaintiff was concerned about taking biologic medication while breastfeeding and that it could cause cancer, the ALJ noted that her providers told her the treatment was safe.  *Id.*  Thus, the ALJ concluded that plaintiff "did not demonstrate good cause for not following prescribed treatment," but did not deny disability benefits on that basis alone.  *Id.*

As to plaintiff's alleged fecal incontinence, the ALJ observed that plaintiff reported incontinence to her doctor only once and did not

8

consistently wear protective clothing to guard against accidents.  *Id.*,
PageID.70.  While the ALJ acknowledged that incontinence was an issue
during flares, plaintiff reported having only three to six stools per day once
the flares were resolved.  *Id.*  The ALJ also concluded that plaintiff's daily
activities conflicted with a disabling condition.  *Id.*, PageID.71.

Plaintiff challenges the ALJ's analysis of her subjective symptoms on
various grounds that the Court addresses in turn below.

## 1.

Plaintiff contends that the ALJ downplayed her UC symptoms with the
speculative, conclusory rationale that she did not consistently wear
protective clothing.  ECF No. 13, PageID.2748-2749.  That argument
overlooks the rest of the ALJ's analysis described above.  Nor was the
ALJ's analysis speculative.  Plaintiff admitted during the hearing that she
did not always wear protective clothing.  ECF No. 10-2, PageID.114.  And
the medical records show that plaintiff complained to a doctor about
incontinence only once, and either denied or did not mention the problem at
other appointments.  *See, e.g.*, ECF No. 10-7, PageID.504, 506, 509, 514;
ECF No. 10-8, PageID.1642, 1720; ECF No. 10-9, PageID.2009.  Thus, her
allegations about incontinence conflict with her reports to her medical
providers.

9

**2.**

Next, plaintiff challenges the ALJ's discussion of her daily activities. ECF No. 13, PageID.2749-2750.  She contends that the ALJ failed to acknowledge her UC symptoms like abdominal pain, diarrhea, urgency, fatigue, weight fluctuations, dry skin, fever, and her need to use the bathroom six to eight times a day for 20 minutes at a time.  *Id.*  Plaintiff maintains that her symptoms often prevent her from performing daily activities.  *Id.*  Plaintiff also emphasizes that her boyfriend's father comes over every day for several hours to help with childcare and chores.  *Id.*; ECF No. 18, PageID.2803.

The ALJ discussed those claims but concluded that plaintiff's daily activities were not as restricted as she alleged.  ECF No. 10-2, PageID.63-64, 71.  Substantial evidence supports that conclusion.  The ALJ pointed to plaintiff's testimony that she is the primary caregiver for her son and that she drove between Michigan and Florida every six months through 2019. *Id.*, PageID.71, 95, 110.  In May 2018, plaintiff asked her medical provider if she could go boating, and she went out of town in October 2018 and early 2019.  *Id.*, PageID.71; ECF No. 10-8, PageID.780-781, 1051, 1644.  In May 2019, plaintiff reported during a counseling session that she "enjoys travel and fun activities, going to the beach and spending time with loved ones

and her dog." ECF No. 10-9, PageID.1808. And in August 2020, plaintiff told a consulting psychologist that she cares for her son; does her own grocery shopping, cooking, and laundry; and handles her own finances. *Id.*, PageID.2371. She emphasized that she was "independent in the activities of daily living and does not require any assistance with personal hygiene." *Id.* Last, the ALJ accommodated plaintiff's frequent bathroom visits by including an RFC restriction that plaintiff must have access to a bathroom regularly. ECF No. 10-2, PageID.71. When, as here, the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

Plaintiff also argues that the ALJ failed to discuss her pain questionnaire, in which plaintiff described her symptoms and limitations. ECF No. 13, PageID.2751 (citing ECF No. 10-6, PageID.392-395). But an ALJ need not discuss every piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Plaintiff's pain questionnaire repeats the same allegations made in her testimony and function report, which the ALJ discussed. *Compare* ECF No. 10-6,

11

PageID.392- 395 *with id.*, PageID.424-438, ECF No. 10-2, PageID.63-64, 94-95, 105-119.

## 3.

Plaintiff insists that the objective medical records support her alleged limitations.[4]  ECF No. 13, PageID.2751.  She points to an imaging study showing UC, her regular reports of symptoms, hospitalizations for UC flares, and a fecal transplant surgery for recurrent c. difficile infections.  *Id.* The ALJ discussed those records but found that her symptoms were not disabling for the reasons discussed above.  *See* ECF No. 10-2, PageID.64-70.

Plaintiff challenges the ALJ's rationale that her UC symptoms stabilized with medication, arguing that she used the bathroom often, even during periods of stability.  ECF No. 13, PageID.2751-2752.  But substantial evidence supports the ALJ's conclusion.  Plaintiff had weaned herself off medication for a pregnancy when she had a flare that led to her

---

[4] Plaintiff argues that the ALJ misinterpreted objective findings in the medical records.  ECF No. 13, PageID.2749.  But she identifies no records that were misinterpreted, and the Court declines to scour the record for such evidence.  *See Harris v. Saul*, No. 19-10848, 2020 WL 6389827, at *4 (E.D. Mich. June 2, 2020), *adopted* 2020 WL 5761006 (E.D. Mich. Sept. 28, 2020) (finding that a plaintiff waived an argument when he "ask[ed] the Court to hunt for truffles that might be buried in his argument and in the record").

hospitalizations in June and July 2018.  ECF No. 10-8, PageID.1648.  In September 2018, after being treated with the biologic medication Remicade and other medications, plaintiff was having four to six stools daily, with no blood in her stools, rectal urgency, nocturnal stools, or abdominal pain. ECF No. 10-7, PageID.506.  Plaintiff's doctor stated that her UC was stable and that her c. difficile infection was suppressed.  *Id.*, PageID.507.  She reported four to eight stools per day in November 2018, but her doctor stated her UC was in clinical remission and that her c. difficile infection was resolved—any remaining symptoms were attributed to irritable bowel syndrome.  *Id.*, PageID.504-505.  By January 2019, plaintiff reported she had no symptoms and no complaints.  ECF No. 10-8, PageID.1646.

Plaintiff's Remicade was discontinued in February 2019 because of pulmonary nodules.  ECF No. 10-9, PageID.2339, 2383.  She had another flare in March 2019 and admitted to taking the steroid prednisone without consulting a physician.  ECF No. 10-8, PageID.1642, 1644-1645.  Plaintiff's flare continued through April 2019, when she tested positive for c. difficile. *Id.*, PageID.1670-1671, 1717-1718.  In May 2019, plaintiff had a fecal transplant.  ECF No. 10-10, PageID.2689, 2727-2728.  In September and November 2019, providers noted that plaintiff's UC was well controlled and that she was "relatively asymptomatic" on prednisone.  ECF No. 10-9,

13

PageID.2256, 2261. Plaintiff's symptoms remained stable through April 2020, and she was resistant to restarting biologic medication. *Id.*, PageID.2325-2326, 2377, 2543.

Plaintiff had another flare in May 2020, two months after having her son. *Id.*, PageID.2346. Her doctor noted that she had not taken steroids during her pregnancy and was only taking Lialda. *Id.*, PageID.2346-2347. Plaintiff was prescribed prednisone in June 2020 and reported feeling better with only three stools a day by July. *Id.*, PageID.2339. Plaintiff's doctors urged her to start biologic therapy because of the risks of repetitive use of steroids and the potential complications of leaving her UC untreated, but plaintiff declined. *Id.*, PageID.2340; ECF No. 10-10, PageID.2584, 2588-2589.

These records support the ALJ's observation that plaintiff's symptoms stabilized when she began taking medication and worsened when she stopped taking it. Plaintiff's reliance on the cited medical records is unavailing because she has not shown that the ALJ's rationale was flawed and instead asks the Court to impermissibly reweigh the evidence. *See Grant v. Comm'r of Soc. Sec.*, No. 22-cv-11211, 2023 WL 2396920, at *4 (E.D. Mich. Feb 13, 2023), *adopted*, 2023 WL 2393642 (E.D. Mich. Mar. 7, 2023) ("[Plaintiff] does not argue that the ALJ's discussion of these opinions

14

was flawed or lacked the support of substantial evidence.  Instead, [plaintiff]

essentially asks the Court to reweigh the evidence considered by the ALJ,

which is not permitted.").

### 4.

Next, plaintiff challenges the ALJ's conclusion that she was

noncompliant with medication and failed to follow prescribed treatment.

ECF No. 13, PageID.2752-2754.  SSR 16-3p states that if a claimant "fails

to follow prescribed treatment that might improve symptoms, we may find

the alleged intensity and persistence of [her] symptoms are inconsistent

with the overall evidence of record."  The Sixth Circuit similarly held that "a

claimant's failure to follow prescribed treatment is evidence supporting an

ALJ's factual finding that the claimant's testimony was not fully credible."

*Garcia v. Comm'r of Soc. Sec.*, No. 1:13-cv-501, 2015 WL 869191, at *11

(W.D. Mich. Feb. 27, 2015) (citing *Blaim v. Comm'r of Soc. Sec.*, 595 F.

App'x 496, 499 (6th Cir. 2014).  But SSR 16-3p provides that an ALJ will

not find a claimant's symptoms inconsistent with the record evidence

without considering the claimant's reasons for noncompliance or failing to

seek treatment.

The ALJ discussed plaintiff's tendency to alter her courses of

prednisone, which is well documented in the record.  ECF No. 10-2,

PageID.64-69; ECF No. 10-7, PageID.506, 571; ECF No. 10-8, PageID.1644, 1648, 1719; ECF No. 10-9, PageID.2339; ECF No. 10-10, PageID.2589.  Plaintiff argues that her doctors never advised against using steroids and that she "undoubtedly knows what medication combination works best to alleviate her symptoms" given how long she has had UC.  ECF No. 13, PageID.2753.  Not so.  Plaintiff's doctors often told her not to alter her medications on her own, and they described the health risks of repeated steroid use, including osteoporosis.  ECF No. 10-8, PageID.1645, 1649, 1719, 2340; ECF No. 10-10, PageID.2589.[5]  And one provider admonished plaintiff for "seeing multiple physicians for the same complaints and [having] multiple physicians changing and overseeing her medications."  ECF No. 10-8, PageID.1718.

The ALJ also discussed plaintiff's refusal to follow her doctors' recommendations to take Remicade or another biologic medication.  ECF No. 10-2, PageID.65, 67, 69.  She noted plaintiff's concerns that Remicade may be unsafe when breastfeeding and could cause cancer.  *Id.*, PageID.63, 69.  But the ALJ found that those concerns did not justify

---

[5] Plaintiff incorrectly argues that her doctor did not discourage the use of steroids in a July 2020 record, as she was prescribed prednisone in June 2020 for a flare.  ECF No. 13, PageID.2754.  But her doctor did "not recommend repetitive use of corticosteroids" and stated that plaintiff needed to be on a biologic medication.  ECF No. 10-9, PageID.2340.

16

plaintiff's refusal to follow prescribed treatment, as her providers told her it was safe even when breastfeeding, and "is the best option to avoid comorbid problems associated with [UC], including malignancies and colon cancer." *Id.*, PageID.69.  The record thus supports the ALJ's analysis.  *See* ECF No. ECF No. 10-8, PageID.780, 1719-1721; ECF No. 10-9, PageID.2339-2340; ECF No. 10-10, PageID.2588-2589.[6]

Plaintiff claims that her doctors were "quick to dismiss" her concerns that Remicade led to her miscarriage in 2018 "as a means to validate their own medical opinions."  ECF No. 13, PageID.2752.  She cites an article showing that Remicade has not been studied in pregnant women.  *Id.*  The Court may not consider the article, which is outside the administrative record.  *See Bass*, 499 F.3d at 513.  Plaintiff contends that she was advised by other doctors not to take biologic medications during pregnancy or breastfeeding.  ECF No. 18, PageID.2800 (citing ECF No. 10-2, PageID.108).  Yet she points to no such recommendations in the record, and it is her burden to prove her functional limitations.  *See Jordan v.*

---

[6] Plaintiff argues that she also declined biologic medication because she has a MTHFR gene mutation.  ECF No. 18, PageID.2800.  But her doctors acknowledged that issue when recommending that she take the medication.  ECF No. 10-7, PageID.504-505; ECF No. 10-9, PageID.2339-2340; ECF No. 10-10, PageID.2588.

*Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  Thus, plaintiff has not shown that the ALJ erred.

Plaintiff maintains that the ALJ improperly considered her noncompliance in forming the RFC, citing *Henson v. Comm'r of Soc. Sec.*, No. 7:20-cv-00145-O-BP, 2021 WL 8776794, at *5-6 (N.D. Tex. Dec. 14, 2021).  But that decision, like the Sixth Circuit, holds that while ALJs may not consider noncompliance in forming an RFC, they may "for the narrow purposes of determining credibility and evaluating the severity of subjective symptoms."  *Id.* at *5.  The ALJ determined plaintiff's RFC without reference to her failure to follow treatment recommendations.  ECF No. 10-2, PageID.69-70 ("[E]ven without following treatment, [plaintiff] is at most limited to the above light [RFC].").  Rather, the ALJ discussed plaintiff's noncompliance in finding that her subjective symptoms were not as limiting as alleged.

Plaintiff also argues that the ALJ incorrectly found that she failed to begin taking one of her medications when directed.  ECF No. 13, PageID.2753 (citing ECF No. 10-2, PageID.66, 69).  The Commissioner admits this finding was incorrect, as plaintiff was delayed in starting the medication because the pharmacy was out of stock.  ECF No. 17, PageID.2787; ECF No. 10-8, PageID.1668; ECF No. 10-9, PageID.2009.

18

But the ALJ's analysis about plaintiff's noncompliance rested mainly on other evidence, so this error does not negate her findings or warrant remand.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

### 5.

Plaintiff contends that the ALJ failed to adequately consider side effects from her medications.  ECF No. 13, PageID.2754.  She stated during the hearing that her medications cause irritability, difficulty sleeping, weight gain, heartburn, headaches, nausea, and gastrointestinal issues. ECF No. 10-2, PageID.109.

ALJs must consider the side effects of a claimant's medications.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ asked plaintiff about side effects during the hearing and noted the alleged side effects in the decision.  ECF No. 10-2, PageID.63, 109.  Plaintiff cites no medical records showing that her medications caused significant side effects.  "Where, as here, a claimant testifies that she experiences medication side effects, but the medical records make no indication that she reported medication side effects to her physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from her medications."  *Nyhus-Dell v. Comm'r of Soc. Sec.*, No. 18-CV-10132, 2019 WL 2051895, at *4 (E.D.

19

Mich. Feb. 5, 2019), *adopted*, 2019 WL 1349617 (E.D. Mich. Mar. 26, 2019); *see also Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-666 (6th Cir. 2004).

**6.**

Next, plaintiff argues that the hypothetical posed to the VE did not include a restriction for being off task more than 15% of the workday. ECF No. 13, PageID.2755. Plaintiff argues that she would often be off task given her need to use the bathroom three to eight times a day for 20 minutes at a time. *Id.* As the VE testified, such a restriction would preclude full-time competitive employment. ECF No. 10-2, PageID.125-126.

The RFC provides that plaintiff "[m]ust have access to a bathroom on a regular basis." *Id.*, PageID.62. Plaintiff carries the burden of adducing evidence showing the need for a more restrictive RFC. *See Jordan*, 548 F.3d 423. She has not done so. In support of plaintiff's position that she would be off task more than 15% of the time, she relies only on her own testimony. The ALJ found that plaintiff's testimony conflicted with the evidence described above, and that finding is supported by substantial evidence.

**C.**

Plaintiff argues that the ALJ improperly evaluated the medical opinions.  ECF No. 13, PageID.2755-2756.  ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(a).  "But the regulations only require ALJs to discuss the first two—supportability and consistency."  *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021).  Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be.  §§ 404.1520c(c)(1), 416.920c(c)(1).  An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive.  §§ 404.1520c(c)(2), 416.920c(c)(2).

First, plaintiff summarily argues that the ALJ erred in finding the state-agency reviewing physicians' opinions to be generally persuasive, as they did not examine plaintiff and based their opinions on an incomplete record.  ECF No. 13, PageID.2755.  But state-agency physicians "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."  SSR 17-2p.  Thus, ALJs may

accord great weight to state-agency physicians if their opinions are supported by the record. *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004); *Arabo v. Comm'r of Soc. Sec.*, No. 2:21-cv-12471, 2023 WL 2546482, at *4 (E.D. Mich. Feb. 16, 2023), *adopted*, 2023 WL 2541695 (E.D. Mich. Mar. 16, 2023).  Plaintiff fails to explain how the state-agency physicians' opinions conflicted with the record.

Second, plaintiff contends that the ALJ did not give adequate weight to consultative examiner Terry Rudolph, Ph.D.'s opinion.  ECF No. 13, PageID.2756.  Dr. Rudolph found that plaintiff could perform simple arithmetic but lacked the concentration necessary for sequential computations.  ECF No. 10-9, PageID.2372.  She also exhibited a superficial interpretation of proverbs, literal and concrete reasoning, and impaired formal judgment.  *Id.*  Dr. Rudolph diagnosed her with major depressive disorder.  *Id.*  The ALJ found this opinion somewhat persuasive.  ECF No. 10-2, PageID.72.  Although the findings somewhat aligned with the record, Dr. Rudolph offered no functional analysis or opinion about specific limitations.  *Id.*  The ALJ also noted plaintiff's lack of mental health treatment and functional abilities.  *Id.*, PageID.57-59.

Plaintiff does not identify any flaws in the ALJ's reasoning.  Instead, she cites other records showing that she had anxiety.  ECF No. 13,

PageID.2756 (citing ECF No. 10-9, PageID.1835, 1841, 1846, 1851, 1858).

But the ALJ cited one of those records and noted that while plaintiff

experiences anxiety, no objective medical findings establish more than

minimal limitations. ECF No. 10-2, PageID.57. Plaintiff's argument asks

the Court to reweigh the evidence, which it cannot do. *See Grant*, 2023

WL 2396920, at *4.

## IV. Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary

judgment (ECF No. 13) be **DENIED**, the Commissioner's motion for

summary judgment (ECF No. 17) be **GRANTED**, and the ALJ's decision be

**AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 27, 2023

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel
of record and any unrepresented parties via the Court's ECF System to
their email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on July 27, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
